IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bonarrigo Enterprises, Inc., :  
        Appellant :  
  :  
    v. : No. 928 C.D. 2017
  : Argued: February 6, 2018
Highridge Water Authority :  

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI         FILED: February 27, 2018

Bonarrigo Enterprises, Inc. (BEI) appeals from the order of the Court of Common Pleas of Indiana County (trial court) denying its motion for post-trial relief from an order entered on April 10, 2017 (2017 Order), because the trial court found that despite representations to the contrary, Highridge Water Authority (Authority) elected not to provide water service to BEI pursuant to a previous order issued by the trial court on August 26, 2015.

**I.**

In 2004, Russell J. Bonarrigo, II (Bonarrigo) purchased 3.71 acres located at 64 Rocky Road, Burrell Township, Pennsylvania (Property) on which he wanted to operate a recreational vehicle park. He installed an eight-inch service line as well as sewage and electric on the Property. Although the Lower Indiana County

Municipal Authority originally provided water service to the Property, in 2008, Bonarrigo granted an easement to the Authority for that service line after which the Authority took over the system.

By deed dated April 23, 2012, Bonarrigo transferred the Property to BEI, which is the Property's current owner. BEI submitted an application and payment to the Authority for establishing water service to the Property, and in late 2012, the Authority made one tap-in connection on the Property and initiated water service. BEI then began operating a recreational vehicle (RV) campground for up to 18 campers, depending on the season. After the water passes through the Authority's meter, BEI then transports water to each RV through individual hoses connecting to the service line.

While the Property's service line was above ground when the Authority began providing water service, sometime before the winter of 2012-13, BEI buried the Property's water, sewage and electric lines.

Roughly one-year-and-half years later, in the summer of 2014, the Authority terminated BEI's water service. Before it would reinstate service, it demanded that each of the 18 RV pads have an individual tap-in connection because servicing those vehicles through a single tap-in connection violated its Rules and Regulations. Then, on February 2, 2015, the Authority filed for a municipal lien against the Property for $10,363 alleging that BEI defaulted on payment of tap-in fees and other costs.

The Authority then filed an action requesting that the trial court require BEI to connect all RVs on its Property to the public water system immediately and to cease use of the Property for such purpose until that occurred. In response, BEI filed a complaint seeking declaratory judgment that the Authority violated its own regulations by imposing multiple tap-in fees on the Property and an order directing the Authority to provide water service to the Property through the existing tap, and to strike the municipal liens.

Following a hearing, testimony and various filings by both parties, the trial court entered an order on August 26, 2015 (2015 Order), holding that the Authority was not permitted to charge an individual tap-in fee for each recreational vehicle pad and found the $10,363 municipal lien was null and void. The trial court also held:

> [The Authority] has the following two options: [the Authority] can require [BEI] to connect to the Highridge Water System . . . keeping in mind that a tapping fee cannot be charged for each recreational vehicle. Or, Highridge **can decide not to provide water service to the recreational vehicles on the [Property]**, keeping in mind that Highridge cannot prevent Bonarrigo from providing another water source for the recreational vehicles on the [Property].

(Trial Court Order dated August 26, 2015.) Neither party appealed that order.

## II.

Following the 2015 Order, BEI made a written request for the Authority to advise as to the steps to restore water service to the Property. In response, the

3

Authority provided BEI with an Application of Service. BEI submitted that application, circling the option to "turn on" service – as opposed to the other option of "new tap." (Reproduced Record (R.R.) at 387a.)

In response, the Authority sent a letter dated May 5, 2016, providing:

> Enclosed are the conditions for receiving water now that we have received your application for service.
>
> 1. Authority rules and regulations require:
>
> a) That the **entire layout** throughout the site be **inspected** prior to being backfilled;
>
> b) Each unit served shall have its own curb stop and check valve;
>
> c) Blowoffs must be installed at the ends of the "private water system" being built;
>
> 2. The maximum number of units (15) may not be exceeded unless written permission is provided by the Authority.
>
> 3. The minimum monthly water bill for fifteen units is $239.80 and includes 22,000 gallons. Water usage in excess of this amount shall be billed at $8.40 per thousand gallons.
>
> There is also the issue of your past due bill. Because a mandatory connection notice exists for Burrell Township, and you had not made the necessary arrangements to legally connect, a monthly bill was assessed which now totals $603.76. This must also be satisfied prior to water service being rendered.

(R.R. at 306a) (emphasis added).

4

Because BEI refused to dig up all of the Property's service lines so that they could be visually inspected, the Authority denied water service to the Property. Notwithstanding, the Authority continued to impose monthly "water" and service charges totaling $2,633.04. (R.R. at 305a.)

### III.

In August 2016, BEI filed a three-count complaint for declaratory judgment. Count I contends that the Authority's demand to inspect the entire premises is not permitted by its Rules and Regulations and is unlawful and unduly burdensome. Count II contends that the Authority's ongoing billing practices were improper because no service was being provided to the Property. Count III sought an order compelling the Authority to provide water to the Property on the basis that it was not applying its Rules and Regulations uniformly.

In its Answer, the Authority denied any non-uniform and/or unlawful application of its Rules and Regulations and as it relates to Count II, "denied that the Authority refused to provide water service, as the Authority merely requires [BEI] to abide by its Rules and Regulations in order to obtain water, which [BEI] has failed and refused to do." (R.R. at 60a.) In its prayer for relief, the Authority requested the trial court to "permit the Authority to inspect the waterlines on [the Property], including the individual service lines, permit the Authority to charge for water services provided to [BEI,] and to deny the request to mandate the Authority to supply water to the [Property] until [BEI] comes into compliance with the Rules and Regulations of the Authority . . . ." (R.R. at 62a.)

5

**IV.**

**A.**

At the February 13, 2017 bench trial, BEI presented the testimonies of Bonarrigo and Mark Olechovski (Olechovski), a BEI employee for the last 26 years, to describe the Property's service line as well as how and why it was buried. The testimony can be summarized as follows. In 2007, Olechovski installed an eight-inch service line with a backflow preventer on the meter set.[1] While the service line was originally above ground, after the Authority began providing service to the Property in 2012, the waterline as well as other utility lines to service each RV pad were buried below the frost line. Water is now provided to each RV through use of a hose that connects to the service line. Until July 2014, the Authority continued providing service to the Property even after the service line was buried.

Regarding its claim that the Authority was enforcing its Rules and Regulations in a non-uniform manner, BEI presented the testimony of Bernard David Myers (Myers), the owner of a five-acre trailer park in Westmoreland County. He testified that his property contains 12 trailer pads that receive water service through one Authority tap-in connection. Although the Authority had to relocate that tap-in connection, it has never required any further inspection of the buried service line on that property. He testified, though, that the single connection was installed prior to his acquisition of the property.

---

[1] Although there was no testimony as to the actual length of the Property's waterline, BEI submitted into evidence a Water & Sanitary Sewer Plan (Plan) for the proposed development of approximately 16 multi-bedroom apartment buildings that would surround the Property and use its waterline. (*See* R.R. at 313a.) While the Plan does not include the exact length of the waterline, we note that if read to scale, that it would be somewhere between 450 to 500 feet in length.

Also regarding the disparate treatment issue, BEI presented the testimony of Gary Clawson (Clawson), a general contractor who has done work on approximately 30 properties serviced by the Authority. He testified that one of those properties was a 300-acre property in Westmoreland County (Dolan Property), on which there was a residence and three outbuildings. In 2015, he dug and built a 9,000-foot connection to the main residence and requested the Authority to come and inspect it before he buried the line. He testified that the Authority did not come to inspect until the next day, when approximately a quarter of the 9,000-foot line was already buried. While the Authority originally told him that he would need to dig up the line, to date, the Authority has never required those buried lines be excavated or inspected.

In response, George Edward Sulkosky, Jr. (Sulkosky), the Executive Director of the Authority since its foundation, testified. Regarding the continuous billing of the Property, Sulkosky testified that the Property's water and service charges are based on a minimum of 11 RV units. He further explained that if BEI desired to discontinue those charges, it could request that the meter be pulled.

Regarding the alleged non-uniform application of the Authority's Rules and Regulations, Sulkosky explained that the Authority provided service to the Dolan Property without first inspecting the entire service line because those owners signed a supplemental application and/or agreement stating that they would be responsible for any detrimental effects to the Authority's water system if there is a leak, which was then recorded with the deed. He also explained that the Authority did not require an

inspection of Myers' buried service line because, unlike BEI's service line, it was constructed and buried well before the Authority serviced that property.

Michael Caugherty (Caugherty), the Vice Chairman of the Authority, testified that Section 5.04 of the Authority's Rules and Regulations[2] provide that the Authority must be notified prior to backfilling any trench in which a service line is placed so that it can be inspected. While BEI requested that the Authority's Board of Directors (Board) waive or modify that regulation, the Board voted six to one that it wanted the service line uncovered for inspection.[3] Caugherty explained that if BEI

---

[2] Section 5.04 of both the 1991 and 2015 Highridge Water Authority Rules and Regulations, provides:

> When the installation of the Customer Facilities is completed, the Authority shall be notified, prior to any backfilling of the trench, in order that the installation be inspected and improved in the open trench. No water service will be supplied through an installation which has not been inspected and approved in the open trench. This requirement of approval is applicable to all new installations and to repairs made to any existing installation.

(R.R. at 327a, 362a.)

[3] As pertinent, the minutes for the Board's decision provides:

> [BEI] asked the Board to reconsider its demand that the pipelines be inspected [in] their entirety suggesting that maybe uncovering several spots within the park system could suffice.

> [The Authority's] request for curb stops and backflow preventers for each unit will be honored as will its requirement that blow-off valves be installed at each end of the park's water system.

> [BEI] asked if [the Authority's] minimum monthly fee for eleven units be amended to five in exchange for his promise to keep the park open throughout the year.

**(Footnote continued on next page…)**

8

complied with the Authority's Rules and Regulations, it would supply water to the Property.

The Authority also presented the testimony of Calvin Gindlesperger (Gindlesperger), who is the Authority's Operations Manager. He testified that Section 5.04 of the Authority's Rules and Regulations is a typical regulation that is necessary to make sure that the service lines are the correct depth and the correct connections are used if there is coupling, and to ensure the quality of water as well as water pressure. While he was not involved with BEI's application for water for the Property, he did inspect the Property on one occasion. During that inspection, he observed hoses connecting the RVs to the Authority's water source, which is not an uncommon practice. While Gindlesperger discussed certain risks of contamination, on cross-examination, it was clarified:

> [Counsel:] Mr. Gindlesperger, just a couple things because I'm a little confused. You were talking about the potential for contamination from the [BEI] line to the [Authority] system. I think that's what you said.
>
> [Gindlesperger:] Contamination into his own service line on his property.
>
> [Counsel:] Right. So contamination into [BEI's] property. No contamination into the [Authority] system because you have a blackflow preventer on the meter; right?

_____

**(continued…)**

Mr. Sulkosky promised to give the requests consideration.

(R.R. at 308a.)

9

[Gindlesperger:] Correct.

[Counsel:] So nothing that's in [BEI's] system can get back into [Authority's system]; correct?

[Gindlesperger:] Correct.

(R.R. at 207a-08a.) He also confirmed that he has never had a problem with a service line done by Olechovski on other properties. (R.R. at 209a.)

Finally, the Authority presented the testimony of Edward F. Schmitt (Schmitt), Vice President of Gibson-Thomson Engineering Company, Inc., who has been the Authority's consulting engineer since its inception and was involved with the drafting of its 1991 and 2015 Rules and Regulations. Schmitt testified that he had the opportunity to visit the Property on one occasion and observed that the RVs were connected to the service line via garden hoses. While admitting the backflow preventer prevents cross contamination of the Authority system, he testified that it was important to have backflow preventers connected to each RV to prevent cross contamination with other connections on the Property. He recommended the full excavation of the Property's service line to inspect its depth, material and integrity because such factors can increase the risk of leakage, which can affect water pressure levels and service throughout the area. Regarding the Authority still sending BEI a bill despite discontinuing service, Schmitt explained that this was common practice and that if BEI desired the service charge to cease, then it could simply request the Authority to disconnect the tap-in connection.

**B.**

On April 10, 2017, the trial court issued an order finding that the Authority, "through its actions, has demonstrated its settled decision not to provide water service to the recreational vehicles on the [Property]. This is permissible under the Court's prior decision." (R.R. at 460a.) Based on that finding, the trial court dismissed Count I – regarding the Authority's right to demand full excavation – and Count III – where BEI sought an order compelling the Authority to provide water to the Property. It did, however, find in favor of BEI for Count II, determining that the Authority's ongoing billing practices were improper because no service was being provided to the Property.

After BEI filed a notice of appeal and a 1925(b) Concise Statement, the trial court issued an opinion stating that:

> Following this Court's [2015 Order] . . . [BEI] failed to request that [Authority] cho[o]se one of the options set forth by the Court, i.e., Bonarrigo failed to request that the Board of Directors take a vote to decide whether it would, or would not provide water service to [BEI]. [BEI] merely submitted [an] application for service, and the Board of Directors responded with a list of conditions that must be met by [BEI]. The Court finds that such a conditional response from [Authority] is not a decision to provide service. Additionally, the Court notes that some of the conditions imposed were arguably connected to rules promulgated after, and as a result of, the Court's prior Opinion. [The Authority's] failure to make an affirmative decision in regard to the options clearly presented by this Court in the prior decision leads the Court to conclude [it] has effectively chosen to decline to provide water service to [BEI].

11

Finally, at oral argument on Plaintiff's Motion for Post-Trial Relief, the Court asked counsel for [Authority] if [it] was willing to commit to provide water service to [BEI] upon the terms and conditions that the Court might set if the Court granted the Motion for Post -Trial Relief, and decided the present issues on the merits; counsel could not make that commitment on behalf of the Board of Directors.

Because of the aforementioned findings and factual realities, Bonarrigo is essentially asking this Court, and the Commonwealth Court, to issue an advisory opinion. [The Authority] has chosen to not provide water service to [BEI] (or in the light most favorable to [BEI], not made a decision in regard to the Court's [2015 Order] . . . therefore, [BEI's] request for Declaratory Judgment on the applicability of the new rules (*i.e.*[,] the inspection requirement) and discriminatory treatment by [the Authority] is premature and entirely academic. A decision on those substantive issues will, in fact, not resolve this dispute for [BEI]. No matter what this Court or the Commonwealth Court's decision on these matters are, [the Authority] has the option of simply not providing water service to [BEI] pursuant to this Court's [2015 Order].

(R.R. at 520a-522a.)

## V.

On appeal, BEI contends that the trial court erred when determining that the Authority decided not to provide water service to the Property as allowed by its 2015 Order. Instead, it states that the Authority had decided to provide water but only if a list of conditions were satisfied. It contends that those conditions were unreasonable and were enforced in a discriminatory manner.

12

We agree with BEI that the Authority decided to provide service to the Property. All evidence and testimony unequivocally demonstrates that the Authority chose to service the Property *under the condition* that BEI comply with its Rules and Regulations.

Because the Authority chose to provide service under the condition that (1) the buried waterline be uncovered to permit inspection, (2) each RV must have its own curb stop and check valve, and (3) blowoffs must be installed at the ends of the "private water system" being built (R.R. at 306a), the question remains whether those conditions are reasonable and whether it was disparately applying its rules and regulations to the Property. Having reversed the trial court's finding that the Authority chose not to provide service to the Property, we remand the matter to the trial court to determine if, based on the evidence presented, the conditions that the Authority imposed are reasonable and whether it is disparately applying its Rules and Regulations.

Accordingly, we reverse the trial court's finding that the Authority chose not to provide service to the Property and remand the matter to the trial court to determine if, based on the evidence presented, the conditions that the Authority imposed are reasonable and whether it is disparately applying its Rules and Regulations.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bonarrigo Enterprises, Inc.,                    :
                        Appellant               :
                                                :
            v.                                  :   No. 928 C.D. 2017
                                                :
Highridge Water Authority                       :


# **O R D E R**


AND NOW, this 27th day of February, 2018, it is hereby ordered that the order of the Court of Common Pleas of Indiana County (trial court) in the above-captioned matter is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


Jurisdiction relinquished.


_____
DAN PELLEGRINI, Senior Judge